IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRY CREW, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00380 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NATURE'S VARIETY, INC., d/b/a INSTINCT, *et al.*, | ) ) | |
| | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Terry Crew alleges that Defendants Nature's Variety, Inc., and M.I. Industries (collectively "Defendants"), both pet-food manufacturers doing business as "Instinct," discriminated against him based on his sexual orientation by creating a hostile work environment, terminating him for his complaints regarding discriminatory practices, and refusing to rehire him for the same reasons. The matter is now before the court on Defendants' motion to dismiss counts I and VI of Crew's complaint.[1] For the reasons stated below, Defendants' motion to dismiss will be granted in part and denied in part.

## I. BACKGROUND

Crew, who is gay, began working for Nature's Variety in December 2011, until his position was eliminated in 2018. (Compl. ¶¶ 24–25 [ECF No. 1].) But on April 10, 2019, Nature's Variety rehired Crew for a different position. (*Id.* ¶ 25.) Crew claims that, beginning in February of 2020, several "team members"—employees who worked in the same

---

[1] Defendants' motion to dismiss initially challenged counts I, II, and VI, but Defendants have abandoned their challenge to count II. (*See* Reply Br. at 1 n.1 [ECF No. 14].)

department as Crew—told him about incidents of discrimination they had experienced at Nature's Variety, and Crew promptly reported those allegations to his superiors. (*Id.* ¶¶ 32–68.) The allegations included discrimination based on gender, age, and sexual orientation. (*Id.* ¶¶ 32, 43, 67.)

On or about June 10, 2020, Nature's Variety created a "Diversity Working Group" that aimed to foster diversity and inclusion at the company. (*Id.* ¶ 36.) Following the creation of the group, Crew complained to Defendants' President, Neil Thompson,[2] that the current leaders of the group would "be unlikely to understand a company culture in which a homosexual employee would feel the need to lower the pitch of his voice" or have "his husband referred to as his son" to assimilate with his heterosexual peers. (*Id.* ¶ 38.) When no one else expressed interest in chairing the committee, Crew volunteered to be and was appointed as chair of the diversity working group. (*Id.* ¶ 40.)

In that role, Crew alleges that numerous employees informed him of alleged instances of discrimination that had remained unreported because these employees feared retaliation. (*Id.* ¶ 65.) Crew claims that he consistently raised those issues with his superiors at various meetings. (*See,* e.g., *id* ¶¶ 49, 53, 65, 68.) In response to those concerns, Crew spoke with his supervisor, Brandon Wellman, to report "real problems with [the] team" related to discrimination. (*Id.* ¶ 49.) But Crew alleges that Wellman was not ready to push the issues within the company because he was "afraid of being fired for one misstep." (*Id.* ¶ 50.)

On or about July 29, 2020, Debra McCracken, Defendants' Human Resources director, sent Crew and his team a survey regarding their level of confidence in Mr. Wellman. (*Id.* ¶ 51.)

---

[2] Thompson was President of both Nature's Variety, Inc., and M.I. Industries, Inc. (*See* Compl. ¶ 38.)

Crew "reported Mr. Wellman's failure to lead the team," and requested a time to meet with human resources to discuss multiple issues related to alleged discrimination. (*Id.* ¶¶ 51–52.) Two days later, Crew again reported Wellman's failure to address issues related to discrimination. (*Id.* ¶ 53.) Following his reports, Crew met with Beth Galli, who acted as liaison between Wellman and Nature's Variety's vice president. In that meeting, Crew outlined several instances of ageist and sexist behavior that his team had attributed to Wellman. (*Id.* ¶¶ 54–57.)

Over the next few months, Crew continued to voice his concerns related to company-wide discrimination. Following a meeting held on October 8, 2020, where Crew apparently reported more complaints related to discrimination to his employer's Senior Leadership Team, Crew sent an email to McCracken outlining the claims, which included the use of homophobic slurs by a high-level supervisor. (*Id.* ¶¶ 60–67.) Crew reiterated these concerns in a follow-up meeting with McCracken but claims that, despite McCracken's assurances to Crew that she would investigate the reports of discrimination, none of the reporting individuals were ever contacted; instead, they were terminated less than a month later. (*Id.* ¶ 68.)

On November 2, 2020, Nature's Variety notified Crew that he and his entire team would be terminated due to "organizational restructuring." (*Id.* ¶ 71.) Of the 11 employees whose positions were terminated, only two had neither reported discrimination nor participated in diversity and inclusion events. (*Id.* ¶¶ 74-75.) Crew believes that Nature's Variety eliminated his entire team to conceal its true intent: "targeted removal of employees who had reported discrimination." (*See id.* ¶¶ 71–76.) Following his termination, Crew immediately applied for two new positions at Nature's Variety, but he was not hired for either.

And Crew alleges that he was passed over for one of the two jobs in favor of a heterosexual female with less experience. (*Id.* ¶¶ 79–91.)

On June 10, 2021, Crew filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). That charge described how Crew felt "tokenized" for being openly gay, the specific statement regarding his husband being referred to as his child, and his subsequent termination. Although the EEOC charge mentions "retaliation," it does not reference Defendants' failure to rehire him for either of the positions for which he applied. (*See* ECF No. 8-1.) On April 22, 2022, the EEOC dismissed Crew's charge without making a determination about whether a violation of any of the applicable statutes occurred and issued a Notice of Right to Sue. (*See* ECF No. 8-2.) Crew subsequently filed this action on July 6, 2022, within the prescribed 90-day period. (*See* ECF No. 1.)

Crew's complaint asserts seven counts based on alleged discrimination and retaliation he allegedly suffered while employed at Nature's Variety: discrimination on the basis of his sexual orientation under Title VII (Count I) and the Virginia Human Rights Act (Count II); termination for reporting discrimination under Title VII (Count III) and Virginia Code § 40.1-27.3 (Count IV); a *Bowman* claim[3] under Virginia common law (Count V); and refusal to rehire under Title VII (Count VI) and Virginia Code § 40.1-27.3 (Count VII). (Compl. ¶¶ 95–160.) Defendants subsequently filed the present motion to dismiss counts I and VI on August 2, 2022 (ECF No. 8.) The motion was fully briefed by the parties and is ripe for disposition.

---

[3] Although Virginia is typically an at-will employment state, "the Supreme Court of Virginia has recognized a narrow exception to that rule to allow for common law claims for wrongful termination that violate the Commonwealth's public policy. Such causes of action have come to be known as '*Bowman*' claims," so-called for *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985). *McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 828 (E.D. Va. 1998).

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. *Id.* The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

Defendants argue that Counts I and VI of Crew's complaint fail to state a claim because they exceed the scope of the allegations in his EEOC charge. The court disagrees with Defendants as to Count I but agrees as to Count VI.

### A. Documents Considered by The Court

Crew first implores the court to convert Defendants' motion to dismiss to one for summary judgment because Defendants attached Crew's EEOC charge and right to sue letter

to their motion to dismiss. (Plt.'s Mem. Opp. to Defs.' Mot. to Dismiss at 2 [ECF No. 13].) Crew contends that, since Defendants "cherry-picked" documents to support their position, the court is now free to consider additional documentation, including a letter Crew sent to the EEOC in response to Defendants' position statement, which he attached to his opposition brief. *Id.* The court declines to convert the instant motion to dismiss to one for summary judgment and will consider only the EEOC charge with the complaint for purposes of deciding the present motion.

As to Crew's first argument, Rule 12(d) empowers the court to convert a motion to dismiss into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). On a motion to dismiss, the court may "consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (cleaned up). The court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (collecting cases). A document is "integral to the complaint" "where the complaint relies heavily upon its terms and effect." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (cleaned up).

Here, because the EEOC charge is explicitly incorporated into the complaint by reference, is integral to the complaint, and its authenticity is not disputed, the court can properly consider it on a motion to dismiss without converting the motion to one for summary judgment. *See Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Virginia, Inc.*, 685 F. App'x 277,

278 (4th Cir. 2017) (citing *Goines*, 822 F.3d at 165–66). Crew expressly references his EEOC charge in the complaint by alleging that he filed an EEOC charge and was issued a Notice of Right to Sue. (*See* Compl. ¶ 12–13.) The charge is also integral to the complaint because Crew, as a Title VII plaintiff, must file an EEOC charge as a prerequisite to filing suit, and he must allege as much in his complaint, which necessitates his reliance on the documents in question. *See* 42 U.S.C. § 2000e–5(b); *see also Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849–51 (2019). Furthermore, Crew does not contest the authenticity of the EEOC charge or right to sue letter because he explicitly cites to them under the "EXHAUSTION OF REMEDIES" heading in his complaint. (Compl. ¶¶ 12–13.) Accordingly, the court will consider the EEOC charge without converting the matter to summary judgment.

Indeed, the EEOC charge itself is critical to the court's analysis on 12(b)(6), because administrative exhaustion is required to bring suit under Title VII.[4] Under Title VII issue exhaustion doctrine, any claims not presented in an EEOC charge of discrimination may not be considered in a subsequent federal discrimination suit. 42 U.S.C. § 2000e–5(b); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996)). "The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Balas*, 711 F.3d at 407; *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (explaining that claims raised under Title VII that exceed the scope

---

[4] Courts often use the word "exhaustion" to refer interchangeably to exhaustion of administrative remedies and issue exhaustion. But "[i]ssue exhaustion should not be confused with exhaustion of administrative remedies." *Carr v. Saul*, 141 S. Ct. 1352, 1358 n.2 (2021). Even if a plaintiff has exhausted his administrative remedies, he may have failed to exhaust the particular issue he raises in federal court. *Id.* at 1358–62 & n.2 (considering issue exhaustion where the petitioners had exhausted their administrative remedies).

of the EEOC charge and any charges that would naturally have arisen from a subsequent investigation are procedurally barred). But the EEOC charge itself is as far as it goes, at least on 12(b)(6). Despite Crew's arguments to the contrary, this circuit has stated that, "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." *Balas*, 711 F.3d at 408 (quoting *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999)). For this reason, Crew's submissions to the EEOC outside of his formal charge do not expand the scope of the EEOC charge and cannot be considered at 12(b)(6). *See,* e.g., *Washington v. Fed. Bureau of Prisons*, No. 5:16-CV-3913-BHH, 2019 WL 1349516, at *2 (D.S.C. Mar. 26, 2019) (concluding that magistrate judge properly analyzed exhaustion at the 12(b)(6) stage without considering documentation outside of the administrative charge); *Shaukat v. Mid Atl. Pros., Inc.*, No. CV TDC-20-3210, 2021 WL 5743909, at *2 (D. Md. Nov. 30, 2021) (refusing to consider correspondence with the EEOC when conducting exhaustion analysis at 12(b)(6) stage because the documents were not integral to the complaint); *Johnson v. Silver Diner, Inc.*, No. PWG-18-3021, 2019 WL 3717784, at *3 (D. Md. Aug. 7, 2019) (conducting exhaustion analysis at 12(b)(6) stage by looking solely to EEOC charges); *Hodge v. Walrus Oyster Ale House*, No. CV TDC-18-3845, 2019 WL 6069114, at *4 (D. Md. Nov. 15, 2019) (only considering extra-charge documentation explicitly referenced in plaintiff's complaint when analyzing exhaustion at 12(b)(6) stage).

**B. Counts I & VI: Discrimination based on Sexual Orientation Under Title VII**

Defendants challenge two counts of alleged discrimination brought based on Crew's sexual orientation under Title VII, claiming that the allegations were not exhausted before the EEOC. Count I alleges that Defendants discriminated against Crew by creating a hostile work environment in violation of 42 U.S.C. § 2000e-2(a)(1), which makes it unlawful for an employer "to discriminate against any individual with respect to . . . his privileges of employment . . . because of such individual's race, color, sex, or national origin . . . ." Count VI alleges that Defendants discriminated against Crew by refusing to rehire him for reporting discrimination in violation of 42 U.S.C. § 2000e-3(a), which makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice. . . ." Relying, as the court must, solely on Crew's EEOC charge, the court finds that Crew has exhausted his administrative remedies with respect to Count I, but not Count VI.

Crew's charge narrative is sufficient to put Nature's Variety on notice of his allegation of a hostile work environment, which effectively serves to exhaust his administrative remedies with respect to Count I. *See Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 594 (4th Cir. 2012). Crew's EEOC charge describes how he felt "tokenized" due to his sexual orientation and that he was regularly subjected to comments that made him feel uncomfortable. (ECF No. 8-1.) The charge also describes the incident in which Wellman, Crew's supervisor, referred to Crew's husband as his "child." (*Id.*) Those statements, reasonably construed, would have contributed to a hostile work environment for Crew. Although Defendants argue that the conduct described in the charge was not severe or pervasive, the court is entitled to infer as

much in the light most favorable to Crew—particularly at this preliminary (i.e., 12(b)(6)) stage. *See Fed. Express Corp. v. Holowecki*, 522 U.S. 389, 406 (2008).

Furthermore, the fact that Ranick was not named specifically in the charge does not prevent the court from making a reasonable inference that her comments were a part of the "comments that made [Crew] uncomfortable," as mentioned in the charge. (ECF No. 8-1.) Crew's complaint consistently references that he reported various types of discrimination, including the slurs used by Ranick, and Wellman's statement referring to Crew's husband as his "child." (*See* Compl. ¶ 38.). The law simply does not require the level of specificity in the EEOC charge advocated for by Defendants here. Accordingly, Defendants' motion to dismiss Count I will be denied.

Moving to Count VI, Crew alleges that Defendants refused to hire him for alternate positions because of his extensive history reporting discrimination within Nature's Variety. His EEOC charge, however, is devoid of any reference to Crew applying for other positions at Nature's Variety. Although the court is permitted to draw reasonable inferences from the EEOC charge, "we are not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408. Though Crew's charge says he was terminated, it notes that the last instance of discrimination took place on November 2, 2020—the day he was fired. (ECF No. 8-1.) The court may not make any inferences about conduct or events occurring after that date because they were explicitly foreclosed by the charge itself. In short, Crew stated that the last discriminatory practice occurred the day he was terminated; Nature's Variety can't be "on notice" that Crew is alleging that their discrimination continued after he said it ended. Accordingly, Defendants' motion to dismiss Count VI is granted.

- 11 -

## IV. CONCLUSION

Because Crew's charge demonstrates exhaustion regarding his hostile work environment claim, Defendants' motion to dismiss will be denied as to Count I. But because Crew's charge is devoid of any allegations regarding new-job retaliation, Defendants' motion to dismiss will be granted as to Count VI.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 14th day of September, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE